912 F.2d 911
 Donald R. ROLLINS, Douglas R. Rollins and Misty D. Rollins,
infants, by next friend, Kellen S. ROLLINS,
Plaintiffs-Appellants,
v.
METROPOLITAN LIFE INSURANCE COMPANY and Nancy J. Rollins,
Defendants-Appellees.
 No. 89-2698.
 United States Court of Appeals,
Seventh Circuit.
 Argued May 7, 1990.
Decided Sept. 4, 1990.
 
 Mary M. Runnells, Robert C. Price, Price & Runnells, Bloomington, Ind., for plaintiffs-appellants.
 David W. Sullivan, Cox, Zwerner, Gambill & Sullivan, Terre Haute, Ind., Richard S. Harrison, Cotner, Andrews, Mann & Chapman, Bloomington, Ind., James L. Crawford, Effner, Wagner & Crawford, Terre Haute, Ind., for defendants-appellees.
 Before BAUER, Chief Judge, CUDAHY, Circuit Judge, and WILL, Senior District Judge.[1]
 BAUER, Chief Judge.
 
 
 1
 This case, concerning the imposition of a constructive trust on federal life insurance benefits, comes before us now for the second time. At the time of his death, Donald Rollins held a $100,000 life insurance policy under the Federal Employees Group Life Insurance Act (FEGLIA). Rollins, however, had failed to name a beneficiary on his policy. Under the plain terms of FEGLIA, Rollins' second wife, Nancy, became the beneficiary in the absence of a named party.[2] Rollins' three children by a previous marriage contended that they were entitled to the benefits under the doctrine of constructive trust. On the first appeal, we determined that FEGLIA did not preempt the equitable remedy of constructive trust under state law. Rollins v. Metropolitan Life Insurance Co., 863 F.2d 1346 (7th Cir.1988) ("Rollins I "). The district court, on remand, imposed the constructive trust and awarded the children $10,000. The children appeal again, contending that although the constructive trust was properly imposed, the amount of the award was insufficient. Appellee Nancy Rollins contends that the trust was improperly imposed, and that the award was in any event sufficient. We believe the trust proper and the amount sufficient, and therefore affirm.
 
 I. Background
 
 2
 Donald Rollins and Kellen Rollins, his first wife, were married in 1968. They had three children together: Donald R. Rollins, Douglas R. Rollins and Misty D. Rollins (hereafter "the children"). Donald and Kellen were divorced in 1981 by the Indiana Circuit Court. In its final decree, the court stated, this "Court now orders the Petitioner [Donald Rollins] to maintain life insurance upon his life with the children named as beneficiaries thereon and further maintain life insurance policies on the lives [sic] of each child."[3] At the time of the decree, Rollins held a life insurance policy from Western and Southern Life Insurance Company in the amount of $10,000 which named Kellen Rollins as his beneficiary. This policy eventually lapsed and was replaced by a policy for $10,000 from Bankers Life Insurance Company naming his children as beneficiaries. Rollins was also insured at the time of this divorce under a group life insurance plan from his employer, RCA, for $24,000. The beneficiary of this policy was the woman who was to become his second wife, Nancy J. Rollins.
 
 
 3
 Donald and Nancy Rollins were married on April 20, 1982. No children were born to that marriage. Nancy did have one child from a previous marriage, but Rollins did not adopt the child. During this second marriage, Rollins left work at RCA and took a job as a civilian employee with the federal government. As part of his federal benefits package, Rollins was covered through the FEGLIA program by a life insurance policy from Metropolitan Life Insurance Company in the amount of $100,000. Rollins failed to designate any beneficiary on this policy.
 
 
 4
 In April of 1986, Donald and Nancy began living apart due to their marital difficulties. Nancy petitioned for divorce and filed for a temporary restraining order to prevent Rollins from harassing or molesting her. A hearing was scheduled for July 14, 1986. The hearing was never held. On May 14, 1986, Rollins was found dead in his trailer; an apparent suicide. The only life insurance remaining at the time of his death was the $100,000 federal policy. The $24,000 policy from RCA lapsed when he terminated his employment there. Similarly, the $10,000 policy from Bankers Life, which had been payable to his children, lapsed when Rollins failed to pay the premiums.
 
 II. Procedural History
 
 5
 The children filed a complaint in the Southern District of Indiana against Metropolitan Life Insurance Company and Nancy Rollins in 1986, seeking the benefits of the FEGLIA policy. Metropolitan Life was dismissed from the case after depositing the proceeds of the FEGLIA policy in the registry of the district court. Nancy, as the remaining defendant, counterclaimed and filed a motion for summary judgment. The district court initially granted her motion, holding that (1) Nancy was indeed the proper beneficiary in the absence of any named party on the policy, according to the strict language of 5 U.S.C. Sec. 8705(a); and (2) that federal law preempted the imposition of a constructive trust on the FEGLIA proceeds. The children then appealed to this court.
 
 
 6
 On appeal, we held that although Nancy was the insured's spouse for purposes of FEGLIA, the issue of the constructive trust was not preempted by federal law. Thus, although Nancy, as Rollins' widow, was the beneficiary in the absence of a named party for purposes of FEGLIA, the children could have superior equitable rights in the FEGLIA benefits. Rollins I, 863 F.2d 1346. We therefore remanded the case to the district court with instructions to apply Indiana state law to the question of whether a constructive trust should be imposed. Id. at 1356.
 
 
 7
 On remand, the district court determined that Indiana law would support the imposition of a constructive trust on the insurance proceeds. The court, therefore, entered judgment on this issue and then requested additional briefs on the question of the proper amount to be covered by the trust. Following submission by the parties of a list of stipulated facts and the additional briefs, the court then granted summary judgment for the children and awarded them $10,000--the amount of the Bankers Life policy. The court did not include the $24,000 RCA policy in its award, as this policy had never named the children as beneficiaries, nor was there any evidence that the Indiana Circuit Court had considered the policy when it fashioned its decree requiring the maintenance of existing life insurance. The children now appeal the amount of this award.
 
 III. Discussion
 
 8
 On appeal, the children raise two issues. First, they contend that the district court, by requiring a second proceeding on the amount of the constructive trust, improperly shifted the burden of proof to the appellants. Second, they argue that by awarding them only $10,000, the court misconstrued the divorce decree rendered by the Indiana Circuit Court. In response, Nancy argues that the constructive trust was improperly imposed and, in the alternative, that the amount awarded under the constructive trust was proper and the children are entitled to no more than $10,000. We will consider these issues in turn.
 
 A. Constructive Trust Principles
 
 9
 The equitable remedy of constructive trust has proved a difficult concept for courts to define. As usual, Judge Cardozo expressed its vague contours most eloquently: "A constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him to a trustee." Beatty v. Guggenheim Exploration Co., 225 N.Y. 380, 386, 122 N.E. 378 (1919), quoted in A.W. Scott and W.F. Fratcher, The Law of Trusts, Sec. 462 (1989). Indiana courts, like most jurisdictions, have long recognized this equitable remedy where a party "through fraud or mistake or by any means ex malificio acquires the property of another." Brown v. Brown, 135 N.E.2d 614 (Ind.1956).
 
 
 10
 Under current Indiana law, equity will create a constructive trust "where there is actual fraud or there exists a breach of duty arising out of a confidential or fiduciary relationship which necessitates the presumption that fraud be found." Givens v. Rose, 383 N.E.2d 448, 453 (Ind.App.1978). The courts have imposed a constructive trust where this confidential or fiduciary duty has been breached, and a third party unjustly enriched as a result of that breach, even absent wrongdoing by the party unjustly enriched. See Kopis v. Savage, 498 N.E.2d 1266 (Ind.App.1986); see also Hunter v. Hunter, 283 N.E.2d 775, 779 (Ind.1972). Thus, equity may collect proceeds from an innocent party in order to protect the equitable rights of those who have suffered the wrong. See Ridgway v. Ridgway, 454 U.S. 46, 71-72, 102 S.Ct. 49, 63-64, 70 L.Ed.2d 39 (1987) (Stevens, J., dissenting).
 
 
 11
 The party seeking to invoke a constructive trust has the initial burden of demonstrating that a confidential or fiduciary relationship exists. Reiss v. Reiss, 516 N.E.2d 7 (Ind.1987). Such a relationship must be established by clear and convincing evidence. Melloh v. Gladis, 309 N.E.2d 433 (Ind.1974); Terry v. West, 524 N.E.2d 343 (Ind.App.1988). Once the plaintiff has established such a relationship and a breach of the resulting duty, the burden necessarily shifts to the defendant to prove good faith, the absence of undue influence, or any other affirmative defense, which would bar the creation of the constructive trust. See Givens, 383 N.E.2d 448; Hall v. Indiana Dept. of Revenue, 351 N.E.2d 35 (Ind.App.1976). See also 28 Indiana Law Encyclopedia ("I.L.E.") Trusts Sec. 78, p. 553.
 
 B. The Children's Claims
 
 12
 Applying these principles of equity to this case, it is apparent that the children have met their initial burden of proof. The divorce decree entered by the Indiana Circuit Court demanded that Rollins maintain life insurance policies with his children as beneficiaries. Despite this order, Rollins failed to maintain this insurance. Although a parent-child relationship alone will not create the confidential or fiduciary duty necessary to impose a constructive trust, see Hunter v. Hunter, 283 N.E.2d 775 (Ind.App.1972), the parental relationship in conjunction with the obligation imposed by the divorce decree will create such a duty. Here, the children have presented uncontradicted evidence that their father breached this fiduciary duty by allowing his insurance policy to lapse. In response, the defendant has raised no affirmative defenses to this conduct. Therefore, we agree with the district court's finding that the children had demonstrated the breach of a fiduciary duty by clear and convincing evidence.
 
 
 13
 The children complain that the court improperly shifted the burden of proof back upon them by requiring a second hearing on the question of the amount of the trust. This argument misreads the nature of these shifting burdens. The children must present clear and convincing evidence that an equitable remedy is appropriate. Nancy is then given the opportunity to rebut this presumption by clear and convincing evidence or an affirmative defense. The children, however, at all times carry the burden of proving the facts of their case by a preponderance of the evidence. The district court, therefore, did not err in concluding that the burden of proving the amount of the constructive trust remained with the children.
 
 
 14
 Once this relationship and breach of duty have been established there must exist particular property upon which the constructive trust may be imposed. See Duran v. Komyatte, 490 N.E.2d 388, 392-93 (Ind.App.1986) (equity would not create constructive trust despite breach of fiduciary duty where no property was affected by breach). Here, the divorce decree created the equitable duty from which the constructive trust stems. Thus, we must interpret this decree in order to determine the property encompassed by the trust. This is not an easy task. The section of the decree addressing insurance is narrow and vague. Donald Rollins was ordered to "maintain" life insurance. No specific policies are mentioned in the decree. No minimum amount of coverage is imposed. Therefore, the reach of the trust turns on the construction of the word "maintain."
 
 
 15
 The children contend this word was used to require Rollins to secure or obtain life insurance, with the children as beneficiaries, and continue payments. Thus, they argue, whatever policy existed at the time of Rollins' death must equitably pass to them. Nancy argues that "maintain" was used in its more typical context to mean that existing insurance could not be allowed to lapse. The district court accepted this latter construction. We agree.
 
 
 16
 There is no evidence indicating that, by using the word "maintain" in the divorce decree, the Indiana court meant to include any and all after-acquired life insurance policies. Rollins had insurance at the time of the divorce and the court decree ordered him to continue making payments. The children point out that Rollins apparently misled the court about what insurance he carried at the time of the divorce. However, the record from the divorce is lost and we cannot know precisely what information the court had before it at the time of the decree. In such an ambiguous state of affairs, we must use the most common construction of the word maintain--to continue payments on existing insurance. Our construction of the operative language comports with the general principle that, absent any evidence to the contrary, courts must construe words according to their plain and ordinary meaning. Cf. Romain v. A. Howard Wholesale Co., 506 N.E.2d 1124, 1126 (Ind.App.1987) ("As a general rule, language in a contract is given its plain and ordinary meaning, that is, that meaning given by the community and ordinary reader."); Nimet Industries, Inc. v. Joy Manufacturing Co., 419 N.E.2d 779, 781 (Ind.App.1981) ("Absent some indication that a word ... should be afforded special meaning in light the parties' relationship, words or phrases of a contract are to be given their ordinary and popular accepted meaning."); In the Matter of Middlefork Watershed Conservancy Dist., 508 N.E.2d 574, 577 (Ind.App.1987) ("Words in a statute are given their plain, ordinary, and usual meanings, absent legislative expression to the contrary."). This construction of the word "maintain"--to continue payments on existing policies--is also commonly accepted throughout most jurisdictions. See Annotation, Divorce: Provision in Decree That One Party Obtain or Maintain Life Insurance For Benefit of Other Party or Child, 59 A.L.R.3d 9, Secs. 13, 14 (citing construction of "maintain" as meaning "to keep in force.").
 
 
 17
 This does not end our inquiry, however. At the time of his divorce from Kellen, Rollins held two life insurance policies: one from Western and Southern Life Insurance Company for $10,000, naming his first wife, Kellen Rollins, as the beneficiary; the other a $24,000 policy from his employer, RCA, naming Nancy Rollins as the beneficiary. The district court determined that only the first policy was covered by the divorce decree and therefore by the constructive trust. The court reasoned that, because the RCA policy was part of an employee benefit package, Rollins could not maintain this when he was no longer employed by that company. Further, because the policy named Nancy as the beneficiary at all times and never named the children, the policy could not now create any equitable rights in the children. Thus, only the $10,000 policy was covered by the equitable trust.
 
 
 18
 We agree. Rollins had intended the RCA policy for his second wife, Nancy, the only beneficiary ever named there. The policy, however, lapsed when he stopped working at RCA. The only policy which ever named the children was the Bankers' Trust policy for $10,000, taken out to replace the lapsed Western and Southern policy. There is no indication that the divorce decree covered anything but this single policy. The decree imposed child support payments of $60 a week. These were later raised to $75 a week. The $10,000 policy, if invested as a lump sum and paid out at this rate to the children, would roughly approximate the amount due to the children up to their majority. Although this appears to have occurred more by coincidence than through any design of the Indiana divorce court, a construction which awards the children $10,000 is consistent with the provisions of the decree itself.
 
 
 19
 Indiana courts have yet to consider the issue of a constructive trust on life insurance benefits ordered through a divorce proceeding. Several other jurisdictions have done so, however, and our approach here is consistent with these other cases. See Simonds v. Simonds, 45 N.Y.2d 233, 408 N.Y.S.2d 359, 380 N.E.2d 189 (1978); IDS Life Insurance Co. v. Sellards, 173 Ill.App.3d 174, 122 Ill.Dec. 928, 527 N.E.2d 426 (1988). In Simonds, for instance, a husband was ordered by the divorce court to maintain his current life insurance policy of $7,000 which named his first wife as the beneficiary. Upon his death, it was discovered that he had allowed his original policy to lapse and named his second wife the beneficiary of a succeeding policy in the amount of $55,000. The first wife was allowed to collect benefits under a constructive trust, but only the initial $7,000 to which she was expressly entitled under the divorce decree. Simonds, 408 N.Y.S.2d at 362-64, 380 N.E.2d at 193-94.
 
 
 20
 We are well aware that awarding the children only $10,000 when viewed as 10% of their father's FEGLIA life insurance policy may appear to be a harsh result. Were we free to respond to conscience rather than law, our actions might be different. We are not so free. Equity will only support the recovery of property fairly traceable to the breach of a confidential or fiduciary relationship. Here, Rollins' breach of his fiduciary duty to his children only extends to the initial $10,000 policy, which he was obligated to maintain under his divorce decree. However unpalatable this result, Nancy Rollins is legally entitled to the remainder of the FEGLIA policy.
 
 C. Nancy's Response
 
 21
 Finally, we must reject on jurisdictional grounds Nancy's attacks on the district court's imposition of the constructive trust. Nancy first questioned the constructive trust in her opening brief. She has not, however, filed a proper cross-appeal. An appellee need not file a cross-appeal for the sole purpose of making an alternative argument in support of a judgment, see In re Harasymiw, 895 F.2d 1170, 1172 (7th Cir.1990); Jordan v. Duff & Phelps, Inc., 815 F.2d 429, 439 (7th Cir.1987), cert. dismissed, 485 U.S. 901, 108 S.Ct. 1067, 99 L.Ed.2d 229 (1988), but where an appellee seeks to modify or overturn a district court's order, she must file a cross-appeal. See Hartford Accident and Indemnity Co. v. Sullivan, 846 F.2d 377, 385 (7th Cir.1988).
 
 
 22
 Here, Nancy attacks the foundation of the district court's judgment--the order of a constructive trust under Indiana law--without filing a cross-appeal. Such a claim does not support the court's holding, but attempts to obliterate it. We are without jurisdiction to hear such a contention absent proper notice to the parties. Even without such jurisdictional problems, we have no doubt that the district court properly found the predicate for this equitable remedy. Nancy's argument is therefore unavailing.
 
 IV. Conclusion
 
 23
 The district court properly imposed a constructive trust on Donald Rollins' federal life insurance policy to protect the equitable rights of the children and to prevent the unjust enrichment of Nancy Rollins, his estranged wife. The divorce decree which created these equitable rights, however, addressed only a single $10,000 policy, and thus this is the maximum amount that can be reached by the constructive trust. The decision of the district court is therefore
 
 
 24
 AFFIRMED.
 
 
 
 [1]
 The Honorable Hubert L. Will, Senior Judge of the United States District Court for the Northern District of Illinois, is sitting by designation
 
 
 [2]
 As we discussed in the first appeal, Rollins v. Metropolitan Life Insurance Co., 863 F.2d 1346, 1348-49 (7th Cir.1988), FEGLIA provides a straightforward priority of beneficiaries. See 5 U.S.C. Sec. 8705(a). The relevant section states:
 (a) The amount of group life insurance and group accidental death insurance in force on an employee at the date of his death shall be paid, on the establishment of a valid claim, to the person or persons surviving at the date of his death, in the following order or precedence:
 First, to the beneficiary or beneficiaries designated by the employee in a signed and witnessed writing received before death in the employing office or, if insured because of receipt of annuity or of benefits under subchapter I of chapter 81 of this title as provided by section 8706(b) of this title, in the Office of Personnel Management. For this purpose, a designation, change, or cancellation of beneficiary in a will or other document not so executed and filed has no force or effect.
 Second, if there is no designated beneficiary, to the widow or widower of the employee.
 Third, if none of the above, to the child or children of the employee and descendants of deceased children by representation.
 Fourth, if none of the above, to the parents of the employee or the survivor of them.
 Fifth, if none of the above, to the duly appointed executor or administrator of the estate of the employee.
 Sixth, if none of the above, to other next of kin of the employee entitled under the laws of the domicile of the employee at the date of his death.
 Sec. 8705(a) (emphasis added). See also 863 F.2d at 1348-49.
 
 
 [3]
 The children insist that the decree instead stated:
 Petitioner will be responsible for the maintenance of life insurance on himself and the children. The children will be the beneficiaries on his life insurance policy and he will be the beneficiary on the children.
 The use of the future tense, rather than the present tense as used by the district court, changes the meaning of the phrase according to the children's argument. This language comes, however, not from the decree but from the outline of the issues submitted by Rollins to the divorce court. In any event, other than Rollins' clever attempt to make himself the beneficiary of his children's life insurance, we cannot see what difference this change in language makes. As the version used by the district court is the same as the one relied upon by this court in Rollins I, 863 F.2d at 1348, we will continue to analyze this language alone.