In the

# United States Court of Appeals
## For the Seventh Circuit

———————

Nos. 00-3744, 00-4152, 01-1663, 02-1268

FEDERAL TRADE COMMISSION,

*Plaintiff-Appellee, Cross-Appellant,*

*v.*

THINK ACHIEVEMENT CORP., *et al.*,

*Defendants, Cross-Appellees,*

and

STEVEN F. STUCKER,

*Defendant-Appellee,*

and

WILLIAM H. TANKERSLEY and LINDA S. TANKERSLEY,

*Defendants-Appellants, Cross-Appellees.*

———————

Appeals from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 98 C 12—**Theresa L. Springmann**, *Magistrate Judge.*

———————

ARGUED SEPTEMBER 27, 2002[*]—DECIDED NOVEMBER 26, 2002

———————

——————————

[*] No. 02-1268 was submitted, rather than argued, the same day.

Before POSNER, RIPPLE, and MANION, *Circuit Judges.*

POSNER, *Circuit Judge.* The Federal Trade Commission brought suit against William Tankersley (and corporations controlled by him, but we can ignore that detail) seeking relief against a wide-ranging, nationwide scheme to defraud persons seeking employment by the Postal Service of millions of dollars in the aggregate. The district court granted summary judgment for the Commission, and Tankersley appeals; he has also attempted to appeal from a judgment for civil contempt entered against him, but that appeal is untimely and is therefore dismissed. The Commission cross-appeals from an order by the district court releasing from a constructive trust imposed by the court on Tankersley's assets $25,000 to pay one of his lawyers.

It is rare for a judge to enter summary judgment in favor of the plaintiff in a fraud case, but in this case the evidence was so overwhelming as to justify the district court in dispensing with a trial. There is no need to describe the evidence, which is detailed in two published opinions by the district court. *FTC v. Think Achievement Corp.,* 144 F. Supp. 2d 993, 1013 (N.D. Ind. 2000). So far as the issue of fraud is concerned, only one matter warrants further discussion. Tankersley's telephone solicitors told callers that if they bought his package of materials for $46.95, they would be "guaranteed" to pass a test that the Postal Service occasionally gives to applicants for employment "with a score of 95% or better . . . or your money is refunded." And sometimes it *was* refunded. Tankersley argues that so long as an advertisement offers consumers a money-back guaranty, the falsity of the claim in the advertisement (for it was indeed false) is irrelevant because harmless.

The argument (which has been repeatedly rejected, see, e.g., *Montgomery Ward & Co. v. FTC*, 379 F.2d 666, 671 (7th Cir. 1967); *FTC v. Pantron I Corp.*, 33 F.3d 1088, 1103 (9th Cir. 1994); *FTC v. SlimAmerica, Inc.*, 77 F. Supp. 2d 1263, 1273 (S. D. Fla. 1999)) puts one in mind of Holmes's theory of liability for breach of contract: he said that the only duty a contract imposes is to perform or pay damages. See Oliver Wendell Holmes, Jr., *The Common Law* 300-02 (1881); Holmes, "The Path of the Law," 10 *Harv. L. Rev.* 457, 462 (1897). Similarly, Tankersley wants us to interpret his advertised guaranty as an undertaking merely to refund the purchase price. This might be a tenable argument if obtaining a refund were costless, but of course it is not. It is a bother. No one would buy something *knowing* that it was worthless and that therefore he would have to get a refund of the purchase price. Had Tankersley's solicitors said, "If you buy our materials it may help you to get a higher score on the postal exam if and when the exam is given in your area, and if it doesn't help you, we'll refund your money," there would be no false representation (provided they really did refund upon request, which in fact they did only sporadically). But that is not what they said. They said buy the materials and it's a sure thing that you'll score 95 percent or better on the test, and that was a lie and it was not redeemed by their offering a refund that, as they well knew, many consumers would not bother to seek, since it was only $46.95. *FTC v. Pantron I Corp., supra*, 33 F.3d at 1103; cf. *Lustiger v. United States*, 386 F.2d 132, 138 (9th Cir. 1967).

There is a further point. Some recipients of Tankersley's materials might have scored 95 or better on the test had they never bought them. They would still be victims of fraud, had they bought the materials because they were deceived into thinking that the materials would guarantee them a score of 95; yet they would not be entitled to their

money back. This is another reason why a money-back guaranty does not sanitize a fraud.

The only other issue that merits discussion is the propriety of the district court's releasing $25,000 from the constructive trust to pay the fee of a lawyer representing Tankersley in a criminal case arising out of the fraud. At the outset of the present suit the court had frozen certain assets of Tankersley, and placed them in the hands of a receiver, to preserve the possibility of providing some financial redress to the victims of his fraud should the fraud be proved in the course of the litigation. That was in January 1998; in March, and again in February and March of the following year, the district court directed the receiver to release some of the funds to Tankersley's lawyer. In October 2000 the court entered its final judgment, ordering restitution (via the FTC) to the victims of Tankersley's fraud in the amount of $28 million, with the entire amount of Tankersley's assets held by the receiver or the FTC—an amount equal at the most to 10 percent of the $28 million—to be applied to the satisfaction of the judgment. It was after the entry of that judgment that the court ordered the receiver to release $25,000 of the frozen assets to pay Tankersley's criminal lawyer the balance of the fee that he had charged his client. The court's authority to order restitution to the victims and as an incident thereto to place the frozen assets in trust for them is not and cannot be questioned. 15 U.S.C. § 53(b); *FTC v. Amy Travel Service, Inc.*, 875 F.2d 564, 572 (7th Cir. 1989); *McGregor v. Chierico*, 206 F.3d 1378, 1387 (11th Cir. 2000).

It was okay for the district court, *prior* to the entry of the final judgment against Tankersley, to permit some of the frozen assets to be used to pay the lawyer who was defending him against the FTC's suit. See *FTC v. Amy Travel Service, Inc., supra*, 875 F.2d at 575-76; *FTC v. World Travel*

*Vacation Brokers, Inc.*, 861 F.2d 1020, 1032 (7th Cir. 1988). For there was not yet a judicial determination of what fraction of those assets was legitimate wealth of Tankersley and what fraction represented proceeds of fraud to which he had no equitable entitlement. But once the court determined that *all* the frozen assets were either a product of fraud or necessary to compensate the victims of the fraud for their losses, Tankersley had no right to use any part of the frozen money for his own purposes, purposes that included defending himself against criminal charges. Even if he has no other money (which is unclear), he will not go undefended, since an indigent criminal defendant is entitled to a defense paid for by the government. "A defendant has no Sixth Amendment right to spend another person's money for services rendered by an attorney, even if those funds are the only way that that defendant will be able to retain the attorney of his choice." *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 626 (1989). Why should the victims of Tankersley's fraud be made to finance his defense to a criminal prosecution? *CFTC v. Morse*, 762 F.2d 60, 63 (8th Cir. 1985); *FTC v. Amy Travel Services, Inc.*, 1988 WL 40817 at *1 (N.D. Ill. 1988). As there is no answer to this question, to make them do so would have been an abuse of the district court's equitable discretion, which though considerable is of course not unlimited. *In re Grand Jury Proceedings Empanelled May 1988*, 894 F.2d 881, 887 (7th Cir. 1989).

Our conclusion is limited, however, to situations in which the defendant is seeking to tap a fund in which he has no lawful interest to pay a lawyer for *future* services. The issue is more complicated if the lawyer rendered services before the judgment determining the defendant's lack of a lawful interest was issued. Suppose that when the freeze was first imposed, the district court estimated that $100,000 of the frozen money was

lawfully Tankersley's, and it therefore told his criminal lawyer that he could count on being able to obtain up to that amount from the fund to pay his fee for defending Tankersley. The fact that later the $100,000 figure turned out to be an overestimate of Tankersley's lawful interest in the frozen assets would not bar the court from allowing the lawyer to receive that amount, since it was on that understanding that he had undertaken the representation of Tankersley. He would be an innocent third party with his own equitable claim to balance against that of the victims of the defendant's fraud. But the $25,000 awarded to Tankersley's lawyer was for representing Tankersley in a criminal case not scheduled to be tried until after the final judgment in the present case was rendered; and the lawyer acknowledged that he had not yet spent any time on Tankersley's case as of that date—the date on which it was established that no part of the frozen assets was lawful property of Tankersley.

The $25,000 order is therefore reversed, but in all other respects the judgment is affirmed.

AFFIRMED IN PART, REVERSED IN PART.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*