**UNITED STATES of America,**

v.

**William H. TANKERSLEY, Defendant.**

**No. 2:01–CR–122AS.**

United States District Court,
N.D. Indiana,
South Bend Division.

Aug. 18, 2003.

Stephen C. Bower, James N. Thiros, Nick J. Thiros, Alison L. Benjamin, Cohen and Thiros, Merrillville, IN, for defendant.

## MEMORANDUM AND ORDER: MOTION TO DISMISS INDICTMENT

ALLEN. SHARP, District Judge.

This matter is before the Court on the motion of Defendant, WILLIAM H. TANKERSLEY, to dismiss the Indictment on grounds of Double Jeopardy. On July 19, 2001, a federal grand jury sitting in this District returned a sixty-count Indictment against Defendant for violations of 18 U.S.C. §§ 371, 1343 & 2, 1956, 1957 & 2, 7206(1) and 982(a)(1). This case is set for trial in South Bend beginning September 2, 2003.

### FACTS

From 1991 through February, 1998, Defendant owned and operated and Patricia Harris and Harry Brankle[1] and others participated in the operation and management of ten (10) companies designated in the Indictment as the "telemarketing companies."[2] In 1998, the FTC commenced a civil action against the corporate entities and individual defendants involved with Defendant's business (a "telemarketing scheme"), alleging violations of Section 5(a) of the Federal Trade Commission Act, 15 U.S.C. § 45(a) by engaging in unfair or deceptive practices affecting commerce. The civil action ultimately was assigned to then-Magistrate Judge Theresa Springmann in this District. Pursuant to this

---

1. Harris and Bankle have already entered guilty pleas to charges stemming from their participation in the telemarketing scheme.

2. The companies included Think Achievement Corporation ("TAC"); Career Advancement Corporation (Indiana) ("CACI"); Educational Seminars Group, Inc. ("ESG"); National Answering Service ("NAS"); New Age Advertising Corporation ("NAA"); Career Advancement Corporation (Florida) ("CACF"); Information Delivery Systems, Inc. ("IDS"); H.D. Davidson Advertising Corporation ("HDD"); The Rosewood Group ("TRG"); and The Answering Service, Inc. ("TAS").

action, a temporary restraining order and preliminary injunction were entered against Defendant that froze all his assets in 1998. During 1999 and 2000, Magistrate Springmann granted summary judgment on liability and damages to the FTC against the defendants to the civil action, including Defendant TANKERSLY. The final judgment[3] in the civil action included an award of restitution in the amount of $28 million and a permanent injunction prohibiting TANKERSLY and the other civil Defendants from engaging in the businesses of telemarketing or selling career advisory materials. Pursuant to this restitution award, Defendant was required to turn over all his real and personal property to a receiver and to provide an accounting of, and repatriate, all assets in foreign countries held by him or by the corporate defendants.

On January 29, 2001, Defendant was found in contempt (civil) of the civil court's final order with regard to the accounting and repatriation of his off-shore assets. After he continued to refuse his compliance within an additional ten-day period provided by the Court, Defendant was imprisoned until he purged himself of the contempt. Defendant was arrested in Naples, Florida, on February 12, 2001 and imprisoned. His appeal for relief from this action was dismissed by the Seventh Circuit. *FTC v. Think Achievement Corp.*, 312 F.3d 259, 261 (7th Cir.2002). At this time, Defendant remains incarcerated, pending the resolution of the motion he filed to vacate the contempt, in which he claims that the contempt order has lost its coercive effect. The FTC has opposed this motion.

Despite the provisions of a temporary restraining order and preliminary injunction issued by the civil court in 1998, which included a freeze of Defendant's assets,

Defendant sold his Tiara 3500 Express Yacht for approximately $213,500 and attempted to transfer $191,000 of the proceeds of that sale to a bank account in the Bahamas. (Defendant also withdrew more than $1 million from his bank account in the Bahamas between March 1998 and October 2000, in violation of the preliminary injunction.) The sale of the yacht and attempted transfer of the proceeds of the sale led to Defendant's indictment by a Federal Grand Jury on two counts of criminal contempt of court (for violating the preliminary injunction), to which Defendant entered guilty pleas in December, 2000. (Defendant has not begun to serve his prison sentence of 24 months for the criminal contempt conviction because he is still incarcerated because of the civil contempt order.)

It should be made clear that the punishments (imprisonment) for the civil and criminal contempt are separate from the charges comprising the indictment in *this* case, where Defendant has been charged with multiple counts of conspiracy, wire fraud, mail fraud, money laundering and filing false tax returns in violation of 18 U.S.C. §§ 371, 1343, 1956, 1957 and 2 and 26 U.S.C. § 7206(1) for misconduct occurring between 1991 and 1998.

The essence of Defendant's argument is that this indictment should be dismissed because, if Defendant is found guilty and punished for acts charged in the indictment, such punishment will amount to a violation of the protection against the Fifth Amendment's Double Jeopardy Clause, in light of the $28 million restitution award and injunction entered in the civil case. In order to decide this issue, this Court first must determine whether the $28 million restitution award and injunction entered by the civil court were punitive in nature.

---

**3.** The Corporate Defendants' and TANKERSLY's appeals ultimately were denied by the

Seventh Circuit. *FTC v. Think Achievement Corp.*, 312 F.3d 259 (7th Cir.2002).

If so, then the Court will address whether punishment for any crimes charged in the indictment would violate Defendant's protection against Double Jeopardy.

## ANALYSIS

The Fifth Amendment to the U.S. Constitution provides:

> No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; *nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb;* nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation. (Emphasis added.)

Relevant to this case is the Double Jeopardy Clause. "This amendment guarantee against double jeopardy protects not only against a second trial for the same offense but also against multiple punishments for the same offense." *Whalen v. United States,* 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980).

## I. The Prior Sanctions Were Civil, Not Criminal

Defendant claims that the present prosecution violates the Double Jeopardy Clause (and any forthcoming punishment would violate the Clause) by reason that he already has been punished by the civil court, and because of his present incarceration.

As it applies to multiple punishments, the interpretation of the Double Jeopardy Clause is evolutionary. The Supreme Court in 1990 held that subsequent prosecutions must pass a "same elements" test to withstand the Double Jeopardy Clause's protections. In *Grady v. Corbin,* Justice Brennan, in writing for the Court, first noted, "That it has long-held that the Double Jeopardy Clause of the Fifth Amendment prohibits successive prosecutions for the same criminal act or transaction under two criminal statutes whenever each statute does not requires proof of a fact which the other does not." *Grady,* 495 U.S. 508, 509, 110 S.Ct. 2084, 2086, 109 L.Ed.2d 548 (1990); *citing Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). In *Grady,* the defendant initially pled guilty to two misdemeanors, driving while intoxicated and failing to keep right of the median in violation of New York state law. *Grady,* 495 U.S. at 510, 110 S.Ct. at 2087. Those charges arose from a traffic accident that Corbin had caused. *Id.* Two months after entering his guilty plea, a grand jury indicted Corbin on counts of manslaughter, criminally negligent homicide and assault for the death and injuries that Corbin caused to those involved in the same traffic accident. *Id.,* 495 U.S. at 513, 110 S.Ct. at 2089. Corbin moved to dismiss the indictment based upon Double Jeopardy grounds in light of his prior guilty pleas. *Id.*

The Court traced the history of its Double Jeopardy decisions, including *Blockburger, Brown v. Ohio,* 432 U.S. 161, 169, 97 S.Ct. 2221, 2227, 53 L.Ed.2d 187 (1977) (when application of the traditional double jeopardy analysis would bar a subsequent prosecution an exception may exist where the State is unable to proceed on the more serious charge at the outset because the additional facts necessary to sustain that charge have not occurred or have not been discovered despite the exercise of due diligence), and *Harris v. Oklahoma,* 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977) (*per curiam* ) (the Double Jeopardy Clause barred a subsequent prosecution for robbery with a firearm because the defendant

had already been tried for felony murder based on the same underlying felony). The Supreme Court ultimately held that the subsequent indictment against Corbin could not stand. The Court held, "The Double Jeopardy Clause bars a subsequent prosecution if, to establish an essential element of an offense charged in that prosecution, the government will prove conduct that constitutes an offense for which the defendant has already been prosecuted." *Grady*, 495 U.S. at 510, 110 S.Ct. at 2087. The Court found that the "same conduct" test was a necessary, additional protection for defendants against the burdens of multiple trials. *Grady*, 495 U.S. at 520, 110 S.Ct. at 2093.

The holding of *Grady v. Corbin* was short-lived. Three terms later, the Court addressed whether the Double Jeopardy Clause bars the prosecution of a defendant on substantive criminal charges that are based upon the same conduct for which he previously has been held in criminal contempt of court. *United States v. Dixon*, 509 U.S. 688, 693, 113 S.Ct. 2849, 2854, 125 L.Ed.2d 556 (1993). The Court traced the history of the "same elements" or "*Blockburger*" test (which inquires whether each offense contains an element not contained in the other and if not, they are the "same offense" and double jeopardy bars additional punishment and successive prosecution), and noted that it recently had held that *Grady* required that the prosecution must satisfy the "same conduct" test (if, to establish an essential element of an offense charged in that prosecution, the government will prove conduct that constitutes an offense for which the defendant has already been prosecuted, a second prosecution may not be had). *Dixon*, 509 U.S. at 695, 113 S.Ct. at 2855. The Court, however, rejected the "same conduct" test, citing *Grady's* lack of constitutional roots, its contradiction of an unbroken line of decisions and its "less than accurate" historical analysis. *Dixon*, 509 U.S. at 704, 710, 113

S.Ct. at 2860, 2863. After *Dixon*, the Government need not satisfy the "same conduct" test to avoid violating the Double Jeopardy Clause, meaning that conduct that gave rise to initial sanctions could lead to a subsequent indictment and conviction.

The Court in *Hudson v. United States*, 522 U.S. 93, 99, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997) expanded the rule set forth in *Dixon* by holding: "The (Double Jeopardy) Clause ... protects only against the imposition of multiple *criminal* punishments for the same offense." In *Hudson*, the Government administratively imposed monetary penalties and occupational debarment on the defendants after they were found to have violated federal banking statutes. *Id.*, 522 U.S. at 94, 118 S.Ct. at 491. The Government later indicted defendants for essentially the same conduct. *Id.* The Court held that the indictment did not violate the Double Jeopardy Clause because the prior administrative proceedings were civil, not criminal. *Id.* The Court stated,

> We have long-recognized that the Double Jeopardy Clause does not prohibit the imposition of all additional sanctions that could, in common parlance, be described as punishment.... Whether a particular punishment is criminal or civil is, at least initially, a matter of statutory construction. A court must first ask whether the legislature, in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other. Even in those cases where the legislature has indicated an intention to establish a civil penalty, we have inquired further whether the statutory scheme was so punitive either in purpose or effect as to transform what was clearly intended as a civil remedy into a criminal penalty.

*Id.*, 522 U.S. at 98, 118 S.Ct. at 493 (citations and quotations omitted). The Court

held, to determine whether a civil remedy rises to the level of a criminal penalty, the Court must consider:

> (1) whether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as a punishment; (3) whether it comes into play only on a finding of scienter; (4) whether its operation will promote the traditional aims of punishment—retribution and deterrence; (5) wether the behavior to which is applies is already a crime; (6) whether an alternative purpose to which it may rationally be is assignable for it; and (7) whether it appears excessive in relation to the alternative purpose assigned.

*Id.* at 99–100, 118 S.Ct. 488, *citing Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 168–69, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963). No one factor is dispositive, and only the "clearest proof" can "override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." *Hudson* at 99–100, 118 S.Ct. 488. In utilizing this test to find that the federal civil penalties at issue in *Hudson* did not cause the subsequent indictment to violate the Double Jeopardy Clause, the Court noted that although the relevant statute under which the civil penalties were meted out (which included the sanction of occupation disbarment) did not specifically state that such sanctions were civil, such a qualification was not necessary. *Id.,* 522 U.S. at 103, 118 S.Ct. at 495. The Court stated, "While the provision authorizing debarment contains no language explicitly denominating the sanction as civil, we think it significant that the authority to issue debarment orders is conferred upon the appropriate [Federal agencies]." *Id.* (citations and quotations omitted).

The Court finally noted that all civil penalties have some deterrent effect, and stated, "If a sanction must be solely remedial (*i.e.*, entirely nondeterrent) to avoid implicating the Double Jeopardy Clause, then no civil penalties are beyond the scope of the Clause." *Id.,* 522 U.S. at 101, 118 S.Ct. at 494 (citations and quotations omitted).

■ In the present case, this Court is convinced that the $28 million restitution order was strictly remedial. In applying the *Hudson* test, the Court notes that, although the civil court's order involves an occupational disbarment, the $28 million restitution award has not historically been regarded as a punishment. The FTC did not have to establish Defendant's scienter in order to win its claims in the civil action. *FTC v. Amy Travel Service, Inc.,* 875 F.2d 564, 574 (7th Cir.), *cert. denied,* 493 U.S. 954, 110 S.Ct. 366, 107 L.Ed.2d 352 (1989). The operation of the civil sanctions may have some effect of deterrence or retribution, but this is not fatal to the Court's analysis. *Hudson,* 522 U.S. at 101, 118 S.Ct. at 494. No alternative purpose need be found to apply to the restitution award, as it is aimed at restoring Defendant's victims to their pre-injury status, and the civil Court's calculation of the amount of restitution appears appropriate and proportional after reviewing the final orders in the civil case.

Further, Congress enacted, as part of the Federal Trade Commission Act, a provision granting district courts the power to issue a permanent injunction upon the Commission's proof that any person, partnership or corporation is violating any portion of the FTC Act. 15 U.S.C. § 53(b). The Seventh Circuit has interpreted this provision as also authorizing the imposition of other equitable relief, including equitable monetary relief, such as the rescission of contracts, restitution, and/or disgorgement of ill-gotten gains. *FTC v. Febre,* 128 F.3d 530, 537 (7th Cir.1997). The Seventh Circuit also has held that such relief—injunctions, restitution, disgorgement—are equitable remedies, which, by all historical accounts, are civil, not crimi-

nal, sanctions. *United States v. Polichemi*, 219 F.3d 698, 711 (7th Cir.2000).[4]

Defendant argues that the $28 million restitution order is a "fine" and that, because he already received sanctions for his conduct alleged in the civil suit, he cannot be charged criminally because the conduct charged in the indictment is the same as what was alleged in the civil suit. Defendant is wrong in this regard.

The civil court ordered Defendant and the "Corporate Defendants" to pay in excess of $28 million as "equitable monetary relief for consumer redress." *FTC v. Think Achievement Corp.*, 144 F.Supp.2d 1013, 1020 (N.D.Ind.2000). This is clearly in line with the holdings of *Febre* and *Polichemi*. It is worth noting that TANKERSLEY does not bear the burden of this restitution award on his own (although Defendant's motion to dismiss alleges that it is TANKERSLEY's sole burden to bear. *See* Motion to Dismiss, p. 3, ¶ 8, p. 10, ¶ 32.) The civil court specifically entitled this sanction "equitable monetary relief" and went to lengths to explain the basis for granting such relief to the victims of TANKERSLEY's and the Corporate Defendants' fraud. The $28 million restitu-

tion award was NOT termed to be a "fine" and this Court is satisfied that the $28 million restitution award was meant to disgorge TANKERSLY's and the Corporate Defendants' undeserved profits and not to impose a fine. In other words, that amount represents equitable relief, not punishment. Despite Defendant's characterizations with regard to the $28 million and the court order to turn over his real and personal property, a fair reading of the civil court's judgment and order in light of the relevant case law, indicates that the civil court intended to restore Defendant's and the Corporate Defendants' victims to their status prior to their injury, and not to institute a fine as a means to punish their wrongful conduct. To support its conclusion, this Court looks to Judge Springmann's October 18, 2000 Order, which provided, with regard to the equitable monetary relief:

> D. This equitable monetary relief is solely remedial in nature and is NOT A FINE, PENALTY, PUNITIVE ASSESSMENT or FORFEITURE.

*FTC v. Think Achievement Corp.*, 144 F.Supp.2d 1013, (Oct. 18, 2000) (emphasis supplied).[5]

---

**4.** With regard to restitution, this Court observes: "Restitution is not technically punishment for a crime as defendant is merely being required to restore what he took." *State v. Rhoda*, 503 A.2d 364, 206 N.J.Super. 584 (1986), certification denied, 523 A.2d 167, 105 N.J. 524. The Seventh Circuit has clearly stated its view that restitution is not a criminal punishment. *U.S. v. Newman*, 144 F.3d 531 (7th Cir.1998). "We do not believe that restitution qualifies as a criminal punishment. Restitution has traditionally been viewed as an equitable device for restoring victims to the position they had occupied prior to a wrongdoer's actions ... It is separate and distinct from any punishment visited upon the wrongdoer and operates to ensure that a wrongdoer does not procure any benefit through his conduct at others' expense ... The criminal law may impose punishments on behalf of all of society, but the equitable pay-

ments of restitution in this context inure only to the specific victims of a defendant's criminal conduct and do not possess a similarly punitive character." *Id.* at 537 (citations and quotations omitted).Further, "We have observed the non-punitive character of restitution in previous cases." *Id.* at 538, *citing U.S. v. Black*, 125 F.3d 454 (7th Cir.1997). The *Newman* Court noted other Circuits that generally believe that restitution is not a criminal penalty: *U.S. v. Arutunoff*, 1 F.3d 1112, 1121 (10th Cir.), *cert. denied*, 510 U.S. 1017, 114 S.Ct. 616, 126 L.Ed.2d 580 (1993); *U.S. v. Rochester*, 898 F.2d 971, 983 (5th Cir.1990).

**5.** This Court is troubled that, despite the civil court's clear qualification of this relief as equitable, Defendant's motion argues that the $28 million restitution order "involved the promotion of traditional aims of punishment retribution, and deterrence by the civil Court

The relief awarded in the prior civil case instituted by the FTC does not prevent Defendant's prosecution here.

## II. No Double Jeopardy Violation With Regard To Civil Or Criminal Contempt

█ Contrary to Defendant's assertion that the "ultimate effect" of the equitable relief (injunctive and monetary) imposed by the civil court is Defendant's imprisonment, Defendant, and Defendant alone, is responsible for his present imprisonment, the twenty-four month period of imprisonment that awaits him, and any additional sentences of imprisonment that Defendant could receive if he is convicted in this case. The crimes charged in the indictment in this case are distinct from the conduct that led to the finding of civil contempt and the conviction for criminal contempt and their attendant penalties. Defendant deliberately chose to violate the civil court's orders. There is no issue as to the validity of the final order or injunction.[6] Defendant's compliance with and obedience of the civil court's orders was required. His disobedience led to his current incarceration and at least twenty-four additional months of incarceration.

"Civil contempt sanctions, or those penalties designed to compel future compliance with a court order, are considered to be coercive and avoidable through obedience." *International Union, UMWA v. Bagwell,* 512 U.S. 821, 828, 114 S.Ct. 2552, 2557, 129 L.Ed.2d 642 (1994). Defendant was found in contempt of the civil court when he completely refused to recount, repatriate, or otherwise turn over his as-

sets to the receiver in order to assist in the fulfillment of the restitutionary remedy—even after the civil court granted an extension of time in which he could comply. This blatant disregard for the civil court's authority—which apparently continues to the present time—led to his incarceration. For purposes of the instant motion, Double Jeopardy is not at issue, because the crimes charged in the indictment in this case are separate from the conduct that led the civil court to imprison Defendant.

"Contempt is criminal if its purpose is to punish the contemnor, vindicate the court's authority, or deter future conduct." *U.S. v. Dowell,* 257 F.3d 694, 699 (7th Cir.2001), citing *U.S. v. Lippitt,* 180 F.3d 873, 877 n. 6 (7th Cir.1999). There is no question that Defendant's twenty-four month prison sentence for violating the preliminary injunction is the result of criminal action that is separate from the offenses indicted in this case. Defendant earned his criminal contempt conviction by the sale of his yacht and his attempt to transfer proceeds of the sale to an off-shore account after the 1998 "freeze" of his assets. He was indicted for misconduct (mail fraud, wire fraud, money laundering and filing false tax returns) in which he participated from 1991 through 1998. There is no danger of violating the Double Jeopardy clause because the crimes before this Court are separate from those for which he entered a guilty plea in December, 2000.

Defendant makes repeated references to his present incarceration and asserts that he has not been given the opportunity to begin to serve his 24–month prison term

---

for reason that civil sanctions imposed under the civil cause [2:98–CV–12–JM] acted as punishment because they served the purposes of deterrence and retribution." (*See* Motion to Dismiss, p. 11, ¶ 35.) (Citations omitted.)

**6.** "A court's civil contempt power rests in its inherent limited authority to enforce compli-

ance with court orders and ensure judicial proceedings are conducted in an orderly manner." *U.S. v. Dowell,* 257 F.3d 694, 699 (7th Cir.2001). This Court need not address the validity of the civil contempt finding because the Seventh Circuit dismissed his appeal of this finding in *FTC v. Think Achievement Corp.,* 312 F.3d 259 (7th Cir.2002).

for the criminal contempt order. These arguments are lost on this Court. In terms of the incarceration for the civil contempt, Defendant "holds the keys" to his own jail cell.[7] The Court was seeking Defendant's compliance with its orders. In light of Defendant's disregard for these orders, the civil Court was entitled to incarcerate Defendant as a means to coerce his compliance. Defendant's own actions led to the criminal contempt order as well. This Court will not aid Defendant in avoiding his personal responsibility for his wilful non-compliance with the Court orders of any Court. Defendant is well-aware of what is required in order for him to serve the twenty-four month term of imprisonment which he already faces. This Court will not usurp the authority of the civil court by interfering with the enforcement of its orders.

## CONCLUSION

In light of the foregoing analysis, the Motion to Dismiss the Indictment is **DENIED.**[8] **IT IS SO ORDERED.**

---

7. It is worth noting that the Seventh Circuit found that a civil contempt order was **not** transformed into criminal contempt where a trial court imprisoned an orthodontist for more than two months and fined him $1,500 per day until he complied with a grand jury subpoena. *See In re: Grand Jury Proceedings,* 280 F.3d 1103 (7th Cir.2002).

8. The Court hereby notes that the Court of Appeals for this Circuit does have the jurisdiction to review this Court's denial of the motion to dismiss based upon Double Jeopardy. *U.S. v. Furlett,* 974 F.2d 839, 841 (7th Cir. 1992); *citing Abney v. U.S.,* 431 U.S. 651, 662–63, 97 S.Ct. 2034, 2041–2042, 52 L.Ed.2d 651 (1977) and *U.S. v. Patterson,* 782 F.2d 68, 72 n. 7 (7th Cir.1986).