Stephanie Rose PREIRA, on behalf of herself and all others similarly situated, Plaintiff,

v.

The BANCORP BANK, Interactive Communications International, Inc., ITC Financial Licenses, Inc., and IH Financial Licenses, Inc., Defendants.

No. 11–CV–1547 (CS).

United States District Court, S.D. New York.

Aug. 17, 2012.

David J. Meiselman, James R. Denlea, Jeffrey I. Carton, Robert J. Berg, Meiselman, Denlea, Packman, Carton & Eberz P.C., White Plains, NY, for Plaintiff.

Casey D. Laffey, Othiamba Lovelace, Felicia Yu, Reed Smith LLP, New York, NY, for Defendants.

## MEMORANDUM AND ORDER

SEIBEL, District Judge.

Before the Court is Defendants' Motion to Dismiss, (Doc. 22), Plaintiff's First Amended Class Action Complaint (the "Complaint" or "Compl."), (Doc. 15), under Federal Rules of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, 12(b)(2) for lack of personal jurisdiction over Defendant IH Financial Licenses, Inc., and 12(b)(6) for failure to state a

claim. For the following reasons, Defendants' Motion is GRANTED.

## I. *BACKGROUND*

I assume the facts, but not the conclusions, in the Complaint to be true for purposes of Defendants' Motion.

Defendants The Bancorp Bank, Interactive Communications International, Inc., ITC Financial Licenses, Inc., and IH Financial Licenses, Inc., advertise, promote, market, distribute, service, warrant, and sell prepaid, stored-value Vanilla Visa and Vanilla MasterCard gift cards (collectively, the "gift cards") throughout the United States. (Compl. ¶¶ 1–2.) In exchange for paying an activation fee, consumers can purchase the gift cards for a pre-set value at major chain retailers, such as CVS and 7 Eleven, and when the gift cards are used, the pre-set value decreases in the amount equal to each transaction. (*Id.* ¶¶ 2, 16.) The gift cards are "non-reloadable," meaning that cardholders cannot add value or merge the values of two or more gift cards after purchase. (*Id.* ¶¶ 39, 42.)

The packaging for both the Visa and MasterCard gift cards is virtually identical, with each gift card coming in a sealed package that states on the front that the card is either a Visa or MasterCard gift card, bearing the "Vanilla®" logo, and denoting that the card is valued at "$20–$500 + S4.95 Purchase Charge." (*Id.* ¶¶ 19–20; *id.* Ex. A, at 1.) In smaller font on the back of the packaging, it states, among other things, "**TERMS AND CONDITIONS APPLY.** See enclosed Cardholder Agreement for details. IMPORTANT—Be sure to provide gift card recipient the enclosed Cardholder Agreement. **For Card information, the Cardholder Agreement, or to request a replacement Card, call 1–800–571–1376 or visit www.vanillavisa. com [or www.vanillamastercard.com]. Expired Card will be replaced upon request. Card funds never expire.**" (*Id.*

¶ 22 (emphasis in original); *id.* Ex. A, at 2.) At the point of sale, the Cardholder Agreement contained inside the packaging is inaccessible to the customer, but the customer may view the Cardholder Agreement on the relevant company's website or by calling the 800 number before purchase. (*Id.* ¶¶ 26, 28.) Further, cardholders have access to the Cardholder Agreement inside the packaging after the card has been activated, but before engaging in their first transaction. (*Id.* ¶¶ 28, 30–31.)

The outer packaging and Cardholder Agreement state that the gift cards may be used to make purchases from merchants that accept Visa or MasterCard debit cards. (*Id.* ¶¶ 22, 34; *id.* Ex. A, at 2; *id.* Ex. B, at 1; *id.* Ex. C, at 1.) But "[s]ome merchants do not allow cardholders to conduct split transactions where [a cardholder] would use the Prepaid Giftcard as partial payment for goods and services and then pay the remainder of the balance with another form of legal tender." (*Id.* Ex. B, at 2; *id.* Ex. C, at 2.) This restriction prevents cardholders from completely depleting the gift cards at some merchant locations when their gift card balances are lower than the cost of the goods or services they seek to purchase. (*Id.* ¶ 36.) At merchant locations that allow split transactions, cardholders must inform the cashier that they would like to complete a split transaction and in what amount before the gift card is swiped, or the gift card is likely to be declined. (*Id.* ¶ 37; *id.* Ex. B, at 2; *id.* Ex. C, at 2). The "Revocation/Cancellation" section of the Cardholder Agreement states,

> You may cancel this Cardholder Agreement by returning the Prepaid Giftcard to us. Your termination of this Cardholder Agreement will not affect any of our rights or your obligations arising under this Cardholder Agreement prior to termination. Any remaining balance will be sent to you by check as long as

you return the Prepaid Giftcard to Vanilla Visa [or Vanilla MasterCard] Gift Card Customer Service, PO Box 826, Fortson, GA 31808, and provide your name and address.

(*Id.* Ex. B, at 5; *id.* Ex. C, at 5.) The outer packaging explains that "[c]ard funds never expire." (*Id.* ¶ 22; *id.* Ex. A, at 2.)

In or about January 2011, Plaintiff purchased a Vanilla Visa gift card for $25 plus $4.95 activation fee. (*Id.* ¶ 45.) Thereafter, Plaintiff used her gift card to engage in transactions with merchants, each for less than the balance remaining on the gift card. (*Id.*) In or about February 2011, Plaintiff attempted to engage in a transaction for more than the remaining balance on her gift card, but the merchant would not complete a split transaction and the gift card was declined. (*Id.* ¶ 46.) In the same month, Plaintiff attempted to complete a second split transaction at a Wal-mart store, but the debit card terminal stated, "Card issuer denied the charge," and the Wal-mart clerk explained that Wal-mart store has problems with Vanilla Visa and MasterCard gift cards "all the time." (*Id.* ¶ 47.)[1]

Plaintiff brings this lawsuit as a class action on behalf of herself and "[a]ll persons who purchased or hold a Vanilla Visa or Vanilla MasterCard Gift Card in New York State for personal use or as a gift, and not for resale." (*Id.* ¶ 49.) She brings claims for (1) violation of the New York General Business Law Section 349 ("Section 349"), (2) breach of the implied covenant of good faith and fair dealing, (3) unjust enrichment, and (4) conversion. (*Id.* ¶¶ 56–73.) She alleges that this Court has subject matter jurisdiction over the action pursuant to the Class Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). (*Id.* ¶ 14.)

## II. DISCUSSION

### A. Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955 (alteration, citations, and internal quotation marks omitted). While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79, 129 S.Ct. 1937.

In considering whether a complaint states a claim upon which relief can be granted, the court may "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determine whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* at 679, 129 S.Ct. 1937. Deciding wheth-

---

1. The Complaint does not explain why Plaintiff purchased a gift card for her own use. It is not immediately clear why a consumer would spend $29.95 to obtain a $25 gift card to use at brick-and-mortar retailers.

er a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (second alteration in original) (quoting Fed.R.Civ.P. 8(a)(2)).

## B. Failure to State a Claim for Damages

Defendants argue that the Complaint should be dismissed for failure to state a claim for cognizable damages. (Ds' Mem. 9–11; Ds' Reply Mem. 3–7.)[2] They argue that neither Plaintiff nor members of the putative class have suffered any injury because (1) balances on the gift cards do not expire; (2) some (although not all) merchants allow cardholders to exhaust the gift card balances by way of split transactions, thus enabling cardholders to use the full value of their gift cards in some stores; and (3) a customer can return a gift card at anytime for a full refund of the remaining balance. (Ds' Mem. 9–10; Ds' Reply Mem. 3–7.) Plaintiff argues that "[t]he unexhausted balance and the non-refundable activation fee" that consumers pay "per card for a card that does not work as advertised are cognizable damages," (P's Mem. 8),[3] and "that consumers may be able to seek a refund of any remaining unusable balances on their Gift Cards (at further expense to themselves by mailing the Gift Cards back to Defendants) does not sanitize Defendants' deceptive acts and practices," (*id.* at 9).

### i. New York General Business Law Section 349

■■■ To state a claim under Section 349, "a plaintiff must allege: (1) the [defendant's] act or practice was consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result." *Spagnola v. Chubb Corp.,* 574 F.3d 64, 74 (2d Cir.2009); *accord Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.,* 85 N.Y.2d 20, 25, 623 N.Y.S.2d 529, 647 N.E.2d 741 (1995). Although the statute does not require an assertion of justifiable reliance or the defendant's intent to deceive or mislead, a plaintiff must allege that the defendant's consumer-oriented deceptive acts or practices "resulted in actual injury to [the] plaintiff." *Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris USA Inc.,* 3 N.Y.3d 200, 205–06, 785 N.Y.S.2d 399, 818 N.E.2d 1140 (2004); *see Oswego,* 85 N.Y.2d at 26, 623 N.Y.S.2d 529, 647 N.E.2d 741. New York courts have rejected the notion that a defendant's deception alone—in other words, allegations of pecuniary loss arising solely from the purchase of the defendant's product—may suffice to plead "actual injury" for a Section 349 claim. *See Small v. Lorillard Tobacco Co.,* 94 N.Y.2d 43, 55–56, 698 N.Y.S.2d 615, 720 N.E.2d 892 (1999) (finding argument that deception is both act and injury fails under Section 349); *Baron v. Pfizer, Inc.,* 42 A.D.3d 627, 840 N.Y.S.2d 445, 448 (3d Dep't 2007) (rejecting argument that consumer who bought product he would not have purchased absent seller's deceptive commercial practices suffered injury within meaning of Section 349); *Donahue v. Ferolito, Vultaggio &*

2. "Ds' Mem." refers to the Memorandum of Law in Support of Defendants' Motion to Dismiss, (Doc. 26.) "Ds' Reply Mem." refers to the Reply Memorandum of Law in Further Support of Defendants' Motion to Dismiss. (Doc. 29.)

3. "P's Mem." refers to Plaintiff Stephanie Rose Preira's Memorandum of Law in Opposition to Defendants' Motion to Dismiss. (Doc. 31.)

*Sons*, 13 A.D.3d 77, 786 N.Y.S.2d 153, 154 (1st Dep't 2004) ("deception as both act and injury ... [is] a theory specifically rejected by our courts"). Rather, a plaintiff must plead something more than the defendant's deception; for example, that "the price of the product was inflated as a result of defendant's deception or that use of the product adversely affected plaintiff's health." *Baron*, 840 N.Y.S.2d at 448.

■ Here, Plaintiff has not alleged that she has suffered an injury within the meaning of Section 349. Plaintiff alleges that she and other similarly situated consumers "are left with balances on their Gift Cards which are too small for use in many transactions" because some merchants will not allow consumers to engage in split transactions, and they have "no options or recourse to reclaim the unused, prepaid balances on the Gift Cards," (Compl. ¶¶ 3, 4, 42), but these contentions are belied by Plaintiff's Complaint and motion papers, as well as the documents that I may consider on a motion to dismiss.[4]

First, Plaintiff concedes that some merchants allow cardholders to engage in split transactions and that a cardholder must merely tell the merchant before the gift card is swiped that he or she intends to engage in a split transaction. (*Id.* ¶¶ 37, 46–47; *id.* Ex. B, at 2 ("*Some* merchants do not allow cardholders to conduct split transactions where [the cardholder] would use the Prepaid Giftcard as partial payment for goods and services and then pay the remainder of the balance with another form of legal tender. If [the cardholder] wish[es] to conduct a split transaction and it is permitted by the merchant, [the cardholder] must tell the merchant to charge only the exact amount of funds available on the Prepaid Giftcard to the Prepaid Giftcard. [The cardholder] must then arrange to pay the difference using another payment method.") (emphasis added); *id.* Ex. C, at 2 (same); P's Mem. 8 (noting two occasions where Plaintiff could not engage in split transaction, but not claiming that split transactions are never allowed).) Therefore, that Plaintiff cannot complete a split transaction with every merchant that accepts Visa debit cards does not mean that she has suffered actual injury within the meaning of Section 349, especially when the Cardholder Agreement discloses this very fact. *See, e.g., Serrano v. Cablevision Sys. Corp.*, 863 F.Supp.2d 157, 167–68 (E.D.N.Y.2012) (dismissing Section 349 claim where defendant's alleged deceptive practice—discretionary restriction of bandwidth or suspension of internet service— fully disclosed in Terms of Service and Acceptable Use Policy); *Shovak v. Long Island Commercial Bank*, 50 A.D.3d 1118, 858 N.Y.S.2d 660, 662–63 (2d Dep't 2008) (affirming dismissal of Section 349 claim where fee associated with mortgage fully disclosed to plaintiff in written agreement); *Broder v. MBNA Corp.*, 281 A.D.2d 369, 722 N.Y.S.2d 524, 526 (1st Dep't 2001) ("[T]here can be no [Section 349] claim

---

4. When deciding a motion to dismiss, ordinarily a court's "review is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir.2007); *accord Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir.2006); *see also Zappia Middle E. Constr. Co. Ltd. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir.2000) (courts evaluating Rule 12(b)(1) motions "may resolve the disputed jurisdictional fact issues by reference to evidence outside the pleadings, such as affidavit"). Each of the documents on which I rely were filed as exhibits to the Complaint and are documents that Plaintiff quotes in the Complaint or relied on in bringing this lawsuit. Accordingly, I may consider each of these documents to determine the instant Motion to Dismiss. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir.2002).

when the allegedly deceptive practice was fully disclosed.").

Second, even if no merchant would ever allow Plaintiff to cash in the small value left on her gift card in a split transaction,[5] Plaintiff can send in her gift card and claim the unused balance on it. As the Cardholder Agreement makes clear, the unused balance never expires and a cardholder may at any time send his or her gift card to Vanilla Visa or Vanilla MasterCard for a full refund of the remaining balance. (Compl. Ex. B, at 5; *id.* Ex. C, at 5.) While Plaintiff argues that a money-back guarantee does not always mean the consumer has not been damaged, she fails to cite a case with analogous facts in which a court has held that a plaintiff sustained actual damages where a defendant had an unrestricted refund policy that fully compensated the plaintiff, and the Court is aware of none. (*See* P's Mem. 9–11 (citing *FTC v. Think Achievement Corp.*, 312 F.3d 259, 261–62 (7th Cir.2002) (money-back guarantee on test-preparation materials that promised 95% or higher on test could "not sanitize a fraud" where guarantee not

available to consumers who would have received passing score without materials— *i.e.,* not all purchasers would have been made whole by refund)); *FTC v. Pantron I Corp.*, 33 F.3d 1088, 1097, 1103 (9th Cir.1994) (finding that money-back guarantee did not preclude liability on Federal Trade Commission Act ("FTCA") false advertising claim relating to hair loss drug efficacy, because in context of FTCA enforcement action, allowing such a guarantee as a defense "would make the false advertising prohibitions of the [FTCA] a nullity"); *Kim v. BMW of Manhattan, Inc.*, 11 Misc.3d 1078(A), 819 N.Y.S.2d 848 (Sup.Ct.2005) (Table) (not addressing issue of money-back guarantee and finding injury under Section 349 because plaintiff was deprived use of his property); *Mountz v. Global Vision Prods., Inc.*, 3 Misc.3d 171, 770 N.Y.S.2d 603, 606, 608 (Sup.Ct.2003) (finding "argument that the money-back guarantee defeats liability meritless" where consumers paid 300% more for fraudulently advertised hair growth product than products made with same ingredient, and restricted money-back guarantee

5. Using my "judicial experience and common sense," *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937, I find it wholly implausible that gift card holders are unable to use the full value of their cards at the many retailers that permit split transactions. Even Plaintiff does not allege that those retailers are few in number or inconveniently located. Further, although I do not consider it for purposes of the Rule 12(b)(6) motion, an affidavit submitted with the Rule 12(b)(1) motion supports that conclusion. At the pre-motion conference held before this Court on July 15, 2011, I gave the parties leave to engage in jurisdictional discovery to determine whether Plaintiff could satisfy the $5 million amount-in-controversy requirement to bring this lawsuit under CAFA. *See Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 59 (2d Cir.2006) (to bring class action under CAFA, amount in controversy must be at least $5 million, which amount may be reached by aggregating each class member's claim). In the course of that discovery, John

F. Maloney, Chief Financial Officer of ITC Financial Licenses, Inc., determined—and has represented to the Court in the context of the instant 12(b)(1) Motion—that there were "1,676,123 Gift Cards with a zero ending balance as of August 4, 2011" and "that there were approximately 397,775 Gift Cards with a positive balance as of August 4, 2011 (the date [Maloney] finalized the spreadsheet). Some of [the latter group of] Gift Cards appear[ed] never to have been used, as their opening balances and ending balances are the same, ..." (Declaration of John F. Maloney in Support of Defendants' Motion to Dismiss, (Doc. 33), ¶¶ 7–8.) Accordingly, these statistics support the common-sense notion that Plaintiff and those similarly situated—like 1,676,123 other gift card holders—could fully deplete the funds on the gift cards through purchases or split transactions, or by sending the cards to Vanilla Visa or Vanilla MasterCard for a return of the remaining funds.

ran only from date of delivery of product to end of monthly supply).)

Plaintiff argues that her claim is not based on the loss of the remaining value on the cards, but rather "on Defendants' false and misleading statements to Plaintiff and the members of the class that the Gift Cards can be utilized and are accepted in the same manner and fashion as Visa and MasterCard debit cards." (P's Mem. 2.) There are two fundamental flaws with this argument. First, Plaintiff nowhere alleges that a holder of a Visa or MasterCard debit card can make split purchases at any retailer. Plaintiff states that gift card holders, "[u]nlike Visa and MasterCard Debit card[holders]," are required to arrange for a split transaction with a retailer when the purchase price exceeds the card balance, (Compl. ¶ 38.) But the quoted portion of the allegation is entirely conclusory. Nowhere does the Complaint state what happens to a debit card holder whose desired purchase costs more than his or her available balance. For all one can tell from the Complaint, when a Visa or MasterCard debit card holder's balance is below the amount of the desired purchase, he or she is in the same boat as a gift card holder whose card likewise does not cover the full purchase—that is, that some retailers will allow a split transaction and others will not.[6] The Complaint thus does not plausibly allege that consumers have been deceived into incorrectly thinking that the gift cards can be used just like debit cards, because it does not allege that debit card holders do not confront the same split-transaction issue that Plaintiff confronted.

Second—putting aside the flaw described in the previous paragraph—if Plaintiffs damage is, as she argues, (P's Mem. 2), that she thought she could use the gift card just like a Visa debit card but cannot, her injury is identical to the deception. Therefore, Plaintiff's argument that she has sustained cognizable damages boils down to the very argument that the New York Court of Appeals has expressly rejected—that is, "that consumers who buy a product that they would not have purchased, absent a manufacturer's deceptive commercial practices, have suffered an injury under General Business Law § 349." *Small,* 94 N.Y.2d at 56, 698 N.Y.S.2d 615, 720 N.E.2d 892. Because Plaintiff has failed to allege, for example, that the cost of the gift card "was inflated as a result of [Defendants'] deception" or that Plaintiff attempted, without success, to recoup the balance of the funds on her gift card, Plaintiff's claim "sets forth deception as both act and injury" and, thus, "contains no manifestation of either pecuniary or 'actual' harm," *Small,* 94 N.Y.2d at 56, 698 N.Y.S.2d 615, 720 N.E.2d 892; *compare Lonner v. Simon Prop. Grp., Inc.,* 57 A.D.3d 100, 866 N.Y.S.2d 239, 247 (2d Dep't 2008) (finding plaintiff stated claim that he was injured by defendant's deceptive conduct under Section 349 in case concerning pre-paid, stored-value gift cards subject to $2.50 monthly "dormancy fee" that was only disclosed to customers in "impermissibly small" font size in customer agreement), *with Donahue,* 786 N.Y.S.2d at 154 (dismissing plaintiffs' Section 349 claim where they "impermissibly set up the deception as both act and injury" by alleging that defendants' deceptive labels on bottled soft drinks, which promised that consumption of product would

---

**6.** Plaintiff alleges that debit cards are different because they are reloadable, while the gift cards are not, (Compl. ¶ 39), but that distinction does not plausibly show she has suffered damages from Defendants' conduct. Even if no merchants ever allowed a split transaction, a debit card holder could obtain the value on his or her card by reloading and the gift card holder could obtain it by refund. Both must take affirmative steps to make use of a card balance that falls short of the amount of the desired purchase.

improve memory, reduce stress, and improve overall health, "caused them to spend money but receive no health benefits in return"). Further, all of the terms of the gift card—including those concerning the limitations on split transactions and the ability to recoup funds on the card—were fully disclosed to Plaintiff before she engaged in her first transaction, although after the card had been activated.[7] *See Ballas v. Virgin Media, Inc.,* 18 Misc.3d 1106(A), No. 600014–2007, 2007 WL 4532509, at *4–5 (N.Y.Sup.Ct. Dec. 6, 2007) (because back of cell phone package directed consumers to check terms and conditions on defendant's website and Terms of Service booklet was provided inside package to every purchaser, Section 349 claim dismissed where alleged deceptive practice fully revealed), *aff'd,* 60 A.D.3d 712, 875 N.Y.S.2d 523, 525 (2d Dep't 2009) (finding that plaintiff failed to allege she suffered injury as a result of alleged deceptive business practice). Accordingly, Plaintiff's Section 349 claims are dismissed for failure to plausibly allege actual injury.

## ii. Unjust Enrichment

■ Plaintiff's unjust enrichment claims are also dismissed for failure to allege an actual injury. A cognizable unjust enrichment claim requires a showing "1) that the defendant benefitted; 2) at the plaintiff's expense; and 3) that 'equity and good conscience' require restitution." *Kaye v. Grossman,* 202 F.3d 611, 616 (2d Cir.2000); *accord Clifford R. Gray, Inc. v. LeChase Constr. Servs., LLC,* 31 A.D.3d 983, 819 N.Y.S.2d 182, 187 (3d Dep't 2006). "The 'essence' of such a claim 'is that one party has received money or a benefit at the expense of another.'" *Kaye,* 202 F.3d at 616 (quoting *City of Syracuse v. R.A.C. Holding, Inc.,* 258 A.D.2d 905, 685 N.Y.S.2d 381, 382 (4th Dep't 1999)); *accord Levin v. Kitsis,* 82 A.D.3d 1051, 920

N.Y.S.2d 131, 134 (2d Dep't 2011). For the reasons already stated—because Plaintiff is not precluded from ever using her gift card in a split transaction or from recouping the *de minimis* value remaining on her gift card—she has not plausibly alleged that Defendants have benefitted at her expense, and her unjust enrichment claims are dismissed.

### iii. Conversion

■ To state a claim for conversion under New York law, a plaintiff must allege "(1) legal ownership or an immediate superior right of possession to a specific identifiable thing and (2) that the defendant exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights." *Ancile Inv. Co. v. Archer Daniels Midland Co.,* 784 F.Supp.2d 296, 312 (S.D.N.Y.2011) (internal quotation marks omitted); *accord Colavito v. N.Y. Organ Donor Network,* 8 N.Y.3d 43, 49–50, 827 N.Y.S.2d 96, 860 N.E.2d 713 (2006) ("A conversion takes place when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession."). For the reasons already stated, Plaintiff has failed to plausibly plead facts that show that Defendants "unlawfully and wrongfully seized possession of monies rightfully belonging to Plaintiff and the other members of the Class through unlawful acts and conduct," (Compl. ¶ 72), and Plaintiff's conversion claims are therefore dismissed.

### iv. Good Faith and Fair Dealing

■ "Implicit in all contracts is a covenant of good faith and fair dealing in the course of contract performance.... This embraces a pledge that neither party shall do anything which will have the effect

---

7. Plaintiff does not argue that she sought a refund of the $4.95 activation fee.

of destroying or injuring the right of the other party to receive the fruits of the contract." *Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384, 389, 639 N.Y.S.2d 977, 663 N.E.2d 289 (1995) (internal quotation marks and citations omitted); *accord Toledo Fund, LLC v. HSBC Bank USA, Nat'l Ass'n*, No. 11–CV–7686, 2012 WL 2850997, at *6 (S.D.N.Y. July 9, 2012); *Elmhurst Dairy, Inc. v. Bartlett Dairy, Inc.*, 97 A.D.3d 781, 949 N.Y.S.2d 115, 117–18 (2d Dep't 2012); *see also Lonner*, 866 N.Y.S.2d at 245–46 (covenant of good faith and fair dealing is implied in sales contract for gift cards). In order to survive a motion to dismiss, the plaintiff must allege facts that tend to show that the defendant "act[ed] in a manner that, although not expressly forbidden by any contractual provision, would deprive the other party of the right to receive the benefits under their agreement." *Frankini v. Landmark Constr. of Yonkers, Inc.*, 91 A.D.3d 593, 937 N.Y.S.2d 80, 83 (2d Dep't 2012) (internal quotation marks omitted); *accord Russo v. Banc of Am. Secs., LLC*, No. 05–CV–2922, 2007 WL 1946541, at *6 (S.D.N.Y. June 28, 2007) (same; covenant "ensures that parties to a contract perform the substantive, bargained-for terms of their agreement and that parties are not unfairly denied express, explicitly bargained-for benefits") (internal quotation marks omitted). Because, as discussed above, Plaintiff has not pleaded facts that show that Defendants acted in a manner that deprived her and similarly situated consumers of their rights to receive the benefits of the gift cards, Plaintiff's good faith and fair dealing claims are also dismissed.

### III. *LEAVE TO AMEND*

Leave to amend a complaint should be "freely give[n] ... when justice so requires." Fed.R.Civ.P. 15(a)(2). It is within the sound discretion of the district court to grant or deny leave to amend. *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir.2007). Leave to amend, "though liberally granted, may properly be denied for: 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir.2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)). Amendment is futile when the claim as amended "cannot withstand a motion to dismiss pursuant to Rule 12(b)(6)," and "[i]n deciding whether an amendment is futile, the court uses the same standard as those governing the adequacy of a filed pleading." *MacEntee v. IBM*, 783 F.Supp.2d 434, 446 (S.D.N.Y.2011) (internal quotation marks omitted). Here, Plaintiff has not pleaded cognizable damages to sustain any of her claims. Thus, the problem with her claims "is substantive[,] ... better pleading will not cure it," and "[r]epleading would thus be futile." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir.2000). Further, Plaintiff has not requested leave to file a Second Amended Complaint or otherwise suggested that she is in possession of facts that could cure the deficiencies. Accordingly, I decline to grant Plaintiff leave to amend *sua sponte*. *See, e.g., Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir.2011) (no error in failing to grant leave to amend where it was not sought); *Walton v. Morgan Stanley & Co.*, 623 F.2d 796, 799 n. 7 (2d Cir.1980) ("[A]ppellants never sought leave to amend their complaint either in the district court or as an alternative form of relief in this court after [appellee] raised the issue of the sufficiency of appellants' complaint. Accordingly, we see no reason to grant such leave *sua sponte*.").

### IV. *CONCLUSION*

For the foregoing reasons, Defendants' Motion to Dismiss Plaintiff's Complaint for

failure to state a claim is GRANTED.[8] The Clerk of Court is respectfully directed to terminate the pending motion, (Doc. 22), and close the case.

**SO ORDERED.**

8. In light of the above, I need not address Defendants' alternative arguments that this case should be dismissed for lack of subject matter jurisdiction under CAFA or that Defendant IH Financial Licenses, Inc. should be dismissed for lack of personal jurisdiction. It strikes me, however, that some of Defendants' arguments regarding jurisdictional amount, (*see* Ds' Mem. 12–19; Ds' Reply Mem. 7–13)—such as that Plaintiff impermissibly assumes that every gift card holder with a low balance is damaged—are well-taken.