**UNITED STATES of America, Plaintiff–Appellee,**

v.

**William H. TANKERSLEY, Defendant–Appellant.**

No. 03–3229.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 9, 2004.

Decided May 12, 2004.

Ellen R. Meltzer, Department of Justice, Washington, DC, for Plaintiff–Appellee.

Alison L. Benjamin, Cohen & Thiros, Merrillville, IN, for Defendant–Appellant.

Before BAUER, MANION, and EVANS, Circuit Judges.

## ORDER

William Tankersley masterminded a scheme of false advertising and solicitation directed at persons interested in United States Postal Service jobs. On July 19, 2001, Tankersley was indicted on one conspiracy count, sixteen counts of wire fraud, ten counts of mail fraud, twenty-nine counts of money laundering, three counts of filing false tax returns, and one count of forfeiture. Tankersley claimed double jeopardy and moved to dismiss the indictment. The district court denied his motion, and he brings this interlocutory appeal challenging that ruling. We affirm.

### I.

On January 15, 1998, the Federal Trade Commission ("FTC") filed a civil complaint against Tankersley and several other individuals and corporations. The FTC complaint alleged that Tankersley and the other defendants committed deceptive acts and practices arising out of a nationwide telemarketing program they ran targeting persons seeking employment with the U.S. Postal Service. For a more detailed discussion of the facts surrounding Tankersley's scheme, see, e.g., Federal Trade Commission v. Think Achievement Corp., 312 F.3d 259 (7th Cir.2002), and United States v. Tankersley, 296 F.3d 620 (7th Cir.2002).

In response to the FTC's civil complaint, the district court entered temporary restraining orders that enjoined Tankersley's unlawful practices, froze his assets, and appointed a temporary receiver. The court eventually entered a stipulated preliminary injunction on March 31, 1998, that prohibited Tankersley from selling, transferring, concealing, or dissipating any funds or assets. The court later found that Tankersley had engaged in deceptive practices in violation of the FTC Act and issued a permanent injunction prohibiting him from engaging in the business of telemarketing and selling career advisory goods. In addition, the court granted the FTC's motion for summary judgment and Tankersley was ordered to pay restitution in the amount of $28,149,600 to consumers injured by his fraudulent conduct. This court affirmed the district court's judgment in Think Achievement Corp., 312 F.3d 259.

In addition to the above legal difficulties, Tankersley's intransigence in refusing to account for his assets held in foreign countries resulted in a civil contempt order by the district court on February 9, 2001. In the civil contempt proceedings, Tankersley argued that an ongoing grand jury investigation into his conduct excused him on Fifth Amendment grounds from complying with the district court's order to account for his assets. The district court disagreed and imprisoned Tankersley for more than two years for refusing to comply with its order. However, on April 8, 2003, the court granted Tankersley's motion to vacate the civil contempt order, ruling that the order had lost its coercive effect because of the length of his incarceration and his continuing refusal to purge himself of contempt.

Tankersley did not remain free for long because, on October 8, 2003, he began serving a separate 24–month sentence for contempt, this time of the criminal variety. Despite the court's preliminary injunction prohibiting Tankersley from selling, trans-

ferring, concealing, or dissipating any funds or assets, he sold his yacht and attempted to transfer the proceeds to a bank account in the Bahamas in early 1999. In December 2000, he pleaded guilty to two counts of criminal contempt and was sentenced to 27 months' imprisonment for violating the court's preliminary injunction. This sentence was vacated due to an erroneous enhancement for obstruction of justice, *see Tankersley,* 296 F.3d at 623–24; however, on remand he was ultimately sentenced to 24 months which he is presently serving.

In the meantime, Tankersley was indicted July 19, 2001, on various conspiracy, wire fraud, mail fraud, money laundering, false tax returns, and forfeiture counts. In this interlocutory appeal of the court's denial of his motion to dismiss the indictment, Tankersley does not argue that the civil and criminal contempt orders violated double jeopardy. Nor does he argue that the civil contempt order violated the Fifth Amendment. Instead, he essentially argues that because the crimes charged in the indictment arose from the same course of conduct that gave rise to the FTC's civil action, the indictment violates double jeopardy. In addition, he claims that the district court's $28,149,600 judgment in the civil action deprived him of assets to such an extent that it must be tantamount to criminal punishment and thus the indictment violates double jeopardy.

## II.

We review de novo the district court's denial of a motion to dismiss based on the Double Jeopardy Clause. *United States v. Asher,* 96 F.3d 270, 273 (7th Cir.1996). At the outset, the government concedes, as it must, that the civil complaint formed the basis for the criminal charges. The Supreme Court, however, has rejected the so called "same conduct" test for double jeop-

ardy purposes. *See United States v. Dixon,* 509 U.S. 688, 704, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993). Instead, the Double Jeopardy clause "protects only against the imposition of multiple *criminal* punishments for the same offense." Thus, the question presented is whether the civil judgment is so punitive in purpose or effect as to constitute criminal punishment within the meaning of double jeopardy and thus bar the present prosecution as a second punishment for the same offense.

We employ a multi-factor test to determine whether a civil sanction is so punitive in purpose or effect as to be in actuality a criminal penalty. *See Hudson v. United States,* 522 U.S. 93, 99, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997). The factors include: (1) whether the sanction involves an affirmative disability or restraint; (2) whether the sanction has historically been regarded as a punishment; (3) whether the sanction comes into play only upon a finding of *scienter;* (4) whether the sanction promotes the traditional aims of punishment—retribution and deterrence; (5) whether the behavior which is sanctioned is already a crime; (6) whether the sanction serves an alternative purpose; and (7) whether the sanction appears excessive in relation to the alternative purpose assigned. *Id.* at 99–100. Under the *Hudson* test, no one factor is dispositive. *Id.* at 101. In addition, only the "clearest proof" will transform what the legislature has designated a civil remedy into a criminal punishment. *Id.* at 100.

Here, the civil statute on its face provides for a civil remedy. *See* 15 U.S.C. § 45(1)(a). Moreover, the district court's permanent injunction was entered under 15 U.S.C. § 53(b), which authorizes the FTC to seek a permanent injunction, upon proper proof, for violations of laws enforced by the FTC. It is well settled that "[t]he district court's authority to grant a

permanent injunction also includes the power to grant other ancillary relief sought by the Commission ... includ[ing] the power to order repayment of money for consumer redress as restitution or rescission." *F.T.C. v. Febre*, 128 F.3d 530, 534 (7th Cir.1997); *see also Federal Trade Commission v. Amy Travel Service, Inc.*, 875 F.2d 564, 572 (7th Cir.1989). Of course, injunctions, restitution, and disgorgement are equitable remedies, which historically are civil and not criminal sanctions. *See United States v. Polichemi*, 219 F.3d 698, 711 (7th Cir.2000).

The injunction prohibits Tankersley from engaging in telemarketing and selling other career advisory goods or services, but this court has consistently held that such an occupational ban does not approach the more serious sanction of imprisonment and thus does not implicate the Double Jeopardy Clause. *See, e.g., Ryan v. Commodity Futures Trading Commission*, 145 F.3d 910, 917 (7th Cir.1998). In addition, the district court made specific factual findings that the $28 million-plus restitution award (the net consumer injury), was not a fine, penalty, or punitive, but instead was meant to disgorge Tankersley's ill-gotten gains. *Cf. United States v. Gartner*, 93 F.3d 633, 635 (9th Cir.1996) (holding that a SEC judgment against a defendant did not constitute "punishment" for purposes of the Double Jeopardy Clause because the judgment bore a rational relationship to the actual damages and costs caused by that defendant).

As an historical matter, the civil judgment of restitution is not viewed as a criminal punishment. *See, e.g., Hudson,* 522 U.S. at 104. The civil judgment serves the alternative purpose of attempting to make whole the consumers who were cheated. This court is not in a position to find that the award was excessive in light of the district court's loss calculations because Tankersley does not challenge the dollar amount of the forfeiture. Thus, the civil judgment does not promote the traditional aims of punishment. Instead, the civil judgment simply restores to the consumers the net amount of loss-a figure that would be the same even if Tankersley possessed assets far in excess of $28,149,600. In sum, the balance of the *Hudson* factors weigh in favor of upholding the district court's finding that the civil judgment was in fact civil in nature and not criminal punishment.

### III.

The district court correctly denied Tankersley's motion to dismiss his indictment on the basis of double jeopardy. Tankersley has not demonstrated by the clearest proof that the balance of factors under *Hudson v. United States* show that the civil judgment is so punitive in purpose or effect as to be in actuality a criminal penalty so as to prohibit the present criminal indictment on the basis of double jeopardy. For these and the foregoing reasons, we AFFIRM the district court.